AO 106 (Rev. 04/10) Application for a Search Warrant

FILED       ENTERED
LODGED      RECEIVED

## UNITED STATES DISTRICT COURT

JUL 1 0 2015

AT SEATTLE
CLERK U.S. DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
BY _____ DEPUTY

for the
Western District of Washington

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) |
| Two (2) Digital Devices currently stored at HSI, Blaine WA and further described in Attachment A. | ) ) ) |

Case No. **MJ15 - 309**

### APPLICATION FOR A SEARCH WARRANT

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

Two (2) Digital Devices currently stored at HSI, Blaine, WA and further described in Attachment A attached and incorporated herein by reference.

located in the _____ Western _____ District of _____ WA _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, attached hereto and incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☑ contraband, fruits of crime, or other items illegally possessed;

☑ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC § 841 | Distribution of Controlled Substances |

The application is based on these facts:

See attached Affidavit of Special Agent Jennifer Hinckley, attached hereto and incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days (give exact ending date if more than 30 days: _____ ) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

SA Jennifer Hinckley, HSI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 7/9/2015   11 Am

_____
*Judge's signature*

City and state:  BELLINGHAM, WA

DEAN BRETT, U.S. Magistrate Judge
*Printed name and title*

1
## AFFIDAVIT

2
STATE OF WASHINGTON          )
3
                                                 )          ss
4
COUNTY OF WHATCOM          )

5
I, Jennifer Hinckley, having been duly sworn, state as follows:

6
## INTRODUCTION AND AGENT BACKGROUND

7
1.      I make this affidavit in support of an application under Rule 41 of the

8
Federal Rules of Criminal Procedure for a search warrant authorizing the examination of

9
digital devices[1] or other electronic storage media,[2] hereinafter the "SUBJECT DEVICES,

10
which are currently in law enforcement possession, and the extraction from those devices

11
or electronic storage media of electronically stored information described in Attachment

12
B.

13
2.      I am a Special Agent with the United States Department of Homeland

14
Security, Homeland Security Investigations (HSI).  I am currently assigned to the HSI

15
Blaine office's Border Enforcement Security Task Force (BEST) in Bellingham,

16
Washington.  I have been an HSI Special Agent for approximately ten years.  I am

17
charged with the investigation of various violations of laws enforced by HSI, to include

18
enforcing federal criminal statutes involving violations of Title 18 and Title 21.  I have

19

20
_____

21
[1] "Digital device" includes any device capable of processing and/or storing data in electronic
form, including, but not limited to: central processing units, laptop, desktop, notebook or tablet
22
computers, computer servers, peripheral input/output devices such as keyboards, printers,
scanners, plotters, monitors, and drives intended for removable media, related communications
23
devices such as modems, routers and switches, and electronic/digital security devices, wireless
24
communication devices such as mobile or cellular telephones and telephone paging devices,
personal data assistants ("PDAs"), iPods/iPads, Blackberries, digital cameras, digital gaming
25
devices, global positioning satellite devices (GPS), or portable media players.

26
[2] Electronic Storage media is any physical object upon which electronically stored information
27
can be recorded.  Examples include hard disks, RAM, floppy disks, flash memory, CD-ROMs,
and other magnetic or optical media.
28

AFFIDAVIT OF SPECIAL AGENT JENNIFER HINCKLEY
USAO# 2015R00315 - 1

1  completed the Criminal Investigator Training Program and Immigration and Customs
2  Enforcement Special Agent Training at the Federal Law Enforcement Center in 2003.
3          3.      The facts set forth in this Affidavit are based on my personal knowledge;
4  knowledge obtained from other individuals during my participation in this investigation,
5  including other law enforcement officers; review of documents and records related to this
6  investigation; communications with others who have personal knowledge of the events
7  and circumstances described herein; and information gained through my training and
8  experience.
9          4.      Because this Affidavit is submitted for the limited purpose of establishing
10 probable cause in support of the application for a search warrant, it does not set forth
11 each and every fact that I or others have learned during the course of this investigation.  I
12 have set forth only the facts that I believe are necessary to establish probable cause to
13 believe that evidence, fruits and instrumentalities of violations of Title 21 United States
14 Code 841, possession of MDMA with intent to distribute will be found on the SUBJECT
15 DEVICES.
16         **IDENTIFICATION OF THE SUBJECT DEVICES TO BE EXAMINED**
17         5.      The SUBJECT DEVICES are:
18                 a.      Samsung cellphone with serial number RF1DA6QK00N; and
19                 b.      HTC cellphone with serial number 37H10442-00M-A.
20
21 The SUBJECT DEVICES are currently located at the HSI Blaine, Washington seized
22 property vault.
23         6.      The warrant would authorize the forensic examination of the SUBJECT
24 DEVICES for the purpose of identifying electronically stored data particularly described
25 in Attachment B.
26
27
28

AFFIDAVIT OF SPECIAL AGENT JENNIFER HINCKLEY
USAO# 2015R00315 - 2

## THE INVESTIGATION

7.      On March 17, 2015, agents with the U.S. Border Patrol Integrated Border Enforcement Team established surveillance in the area of Valley View Road and H Street in Blaine, Washington.  This intersection is less than one mile from the international boundary between Canada and the United States.  This area is sparsely populated and heavily wooded.

8.      There are also pedestrian foot paths in the area that I know, from my training and experience, have previously been used by drug smugglers to walk drug shipments across the border.  Agents had observed with trail cameras a recent pattern of foot traffic in the area occurring every six to seven days between the hours of 11:00 p.m. and midnight, consistent with drug trafficking activity, and were conducting surveillance on the area as a result.

9.      At approximately 11:10 p.m. on March 17, 2015, agents observed a dark-colored 2014 Ford F-150 bearing Washington license plate C25459A[3] approach the intersection of Valley View Road and H Street.  The F-150 turned east onto H Street, which parallels the international boundary.  After turning east, the F-150 stopped on the side of the road for approximately five to six seconds before turning around and returning south on Valley View Road.  Based on my training and experience, and that of fellow law enforcement officers I have worked with, I know it is common practice for drug smugglers to make a brief stop similar to this in order to load or unload their shipment.  When drugs are smuggled from Canada into the United States (or vice versa) using a pedestrian, a load vehicle will travel along one of the roads that parallels the international boundary stopping only briefly enough for the pedestrian to load the drug shipment into the vehicle.

10.      Shortly after observing the Ford F-150 momentarily stop, agents immediately drove to the area where the F-150 had stopped and heard the sound of brush

---

[3] This vehicle is registered to Ean Holdings LLC at 507 E Summa Street, Centralia, Washington.  Ean Holdings LLC is also known as Enterprise Rental.

AFFIDAVIT OF SPECIAL AGENT JENNIFER HINCKLEY
USAO# 2015R00315 - 3

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1   breaking as if one or more pedestrians was walking north towards the international

2   boundary.  Agents initiated a K-9 track of the area to determine whether a pedestrian was

3   in the vicinity.  The K-9 immediately alerted to a pedestrian trail and began tracking

4   north towards the international boundary.  Shortly thereafter, agents located an Asian

5   male sitting on the ground in a wooded area.  This individual was later identified as

6   CHENG-LONG CAI using his Taiwanese passport which was found on his person.

7   Agents noticed that CAI's jacket had indentations in the shoulder area, as if he had just

8   been carrying a heavy backpack.  Agents further examined CAI's shoulders and noticed

9   he had red marks on his shoulders indicative of just having carried a heavy backpack.

10          11.      A second group of agents proceeded to stop the Ford F-150 as it departed

11   the area where it was observed making a brief stop on H Street.  The driver was identified

12   as MIN-HSIANG YUAN by his Taiwanese passport.  YUAN did not speak English and

13   communication between agents and YUAN was limited.  During the vehicle stop agents

14   observed a pink and gray backpack in plain view in the backseat of the F-150.

15          12.      After locating CAI, agents conducted a K-9 sniff of the exterior of the F-

16   150.  The K-9 alerted to the area around the rear passenger side door.  Agents then

17   searched the interior of the F-150 and found that the pink and gray backpack contained

18   multiple Ziploc bags.  Inside the Ziploc bags agents located multiple vacuum sealed

19   freezer bags that contained gray and brown granular powder.  Agents then transported

20   CAI, YUAN, and the F-150 back to the Blaine Station.  Agents performed multiple NIK

21   tests on the granular powder and determined that the powder tested positive for the

22   presence of methylenedioxymeth-amphetamine ("MDMA").  The freezer bags weighed

23   a total of 23.14 gross kilograms.

24          13.      Agents processed YUAN and CAI and asked them biographical questions

25   utilizing an interpreter.  During the questioning YUAN told agents he was in the area

26   because his GPS got him lost.  YUAN told agents he was looking for a hotel.  YUAN

27   later told agents he was driving around looking at the scenery.  As agents processed CAI,

28

AFFIDAVIT OF SPECIAL AGENT JENNIFER HINCKLEY
USAO# 2015R00315 - 4

1 | he told agents he was in the area taking a walk and didn't know he had crossed the
2 | international boundary.
3 |      14.    A review of U.S. Customs and Border Protection travel databases revealed
4 | that YUAN and CAI originally entered the United States together on a November 19,
5 | 2014 flight from Narita Tokyo to Seattle, Washington. That same day they took another
6 | flight together from Seattle, Washington to Vancouver, British Columbia. On January
7 | 12, 2015, YUAN and CAI again traveled together from Vancouver, British Columbia, to
8 | Las Vegas Nevada.
9 |      15.    The night of the MDMA seizure Border Patrol Agents collected multiple
10 | documents from YUAN's rental vehicle which provided evidence that YUAN had been
11 | staying in hotels and renting vehicles along the Interstate 5 corridor. There was one hotel
12 | stay in Eugene, Oregon, and several hotel stays and vehicle rentals in Washington during
13 | January, February and March of 2015. Agents also located an Enterprise rental
14 | agreement for the F-150. The agreement shows that the F-150 was rented by YUAN on
15 | March 17, 2015 in Lynnwood, Washington.
16 |      16.    In my training and experience Drug Trafficking Organizations (DTOs)
17 | operating on the west coast of the United States tend to use Interstate 5 to transport bulk
18 | narcotics from Canada to Mexico and vice versa. DTOs typically use rental vehicles and
19 | hotel rooms because they allow for minimal traceable information as well as the option
20 | for short-term usage. Conducting criminal activity in a rental vehicle also ensures that
21 | the DTO does not suffer a personal loss if the vehicle is seized.
22 |      17.    Based on documents found in the rented truck with YUAN, HSI agents
23 | contacted the hotels, vehicle rental facilities as well as other establishments showing
24 | transactions with YUAN. Many of the businesses had 253-905-7683 as a contact
25 | telephone number for YUAN. Some also had on file a British Columbia, Canada phone
26 | number for an individual whom representatives of the businesses thought to be a
27 | translator, friend, or boss. This individual could be reached at 604-367-2455 or 604-367-
28 | 0052, and told one company his name was Jack, another company, Jes, and a third, Jesse.

AFFIDAVIT OF SPECIAL AGENT JENNIFER HINCKLEY
USAO# 2015R00315 - 5

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1 | During follow-up interviews with businesses that did not have the British Columbia
2 | numbers on file, agents were told that YUAN spoke minimal English, and when it was
3 | difficult to communicate, YUAN called someone on his phone who was able to speak
4 | with the business and translate for him.   DTOs typically have a hierarchy or chain of
5 | command, and often members will look to the boss or the transport organizer if they run
6 | into problems or if there is a decision to be made.

7 |      18.   Information obtained from AT&T disclosed that YUAN went to an AT&T
8 | store in Seattle, Washington and purchased a pre-paid cellphone plan on March 17, 2015,
9 | the day of his arrest.  Based on AT&T documentation, it appears YUAN created a Bring
10 | Your Own Device (BYOD) Go Phone plan, and purchased a Subscriber Identification
11 | Module (SIM) card and minutes for the phone.  That new cellphone SIM card had a
12 | phone number of 206-419-5063.  While in the AT&T store, video footage showed that
13 | YUAN once again dialed someone on his phone to translate and assist with the purchase
14 | of the cellphone.

15 |      19.   Since the arrest of YUAN and CAI, agents attempted to call both of the
16 | British Columbia cellphones listed above for the individual who would translate.  Both
17 | numbers have an automated recording informing the caller that the number is no longer in
18 | service.  Due to the timing of these phone numbers being disconnected, it is probable in
19 | my experience that the individual operating those numbers was a member of the DTO.

20 |      20.   The SUBJECT DEVICES are currently in the lawful possession of HSI.
21 | They came into HSI's possession, via the Border Patrol, who seized them incident to
22 | arrests on March 17, 2015.  YUAN and CAI possessed one cellphone each at the time of
23 | apprehension.  The Samsung cellphone (SUBJECT DEVICE) was seized from CAI's
24 | pant pocket when Border Patrol agents apprehended him.  While processing the items of
25 | evidence after the arrest, CAI's phone revealed at least two missed calls from a British
26 | Columbia area phone number.  The phone number was visible on the display screen of
27 | the phone and agents were able to document the number of the missed call, 604-652-
28 |

AFFIDAVIT OF SPECIAL AGENT JENNIFER HINCKLEY
USAO# 2015R00315 - 6

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  5224, without searching the device.  The HTC cellphone (SUBJECT DEVICE) was

2  seized from the middle console of YUAN's rental vehicle.

3       21.     The SUBJECT DEVICES are currently in storage at the HSI Blaine,

4  Washington seized property vault.  In my training and experience, I know that the

5  SUBJECT DEVICES have been stored in a manner in which their contents are, to the

6  extent material to this investigation, in substantially the same state as they were when the

7  SUBJECT DEVICES first came into the possession of HSI.

8       22.     Based on my knowledge, training, and experience, I know that digital

9  devices and electronic storage media can store information for long periods of time.  This

10 information can sometimes be recovered with forensic tools.

11      23.     Because this warrant seeks only permission to examine a device already in

12 law enforcement's possession, the execution of this warrant does not involve the physical

13 intrusion onto a premises.  Consequently, I submit there is reasonable cause for the Court

14 to authorize execution of the warrant at any time in the day or night.

15                          **TECHNICAL TERMS**

16      24.     Based on my training and experience, I use the following technical terms to

17 convey the following meanings:

18            a.     Wireless telephone:  A wireless telephone (or mobile telephone, or

19 cellular telephone) is a handheld wireless device used for voice and data communication
   through radio signals.  These telephones send signals through networks of

20 transmitter/receivers, enabling communication with other wireless telephones or

21 traditional "land line" telephones.  A wireless telephone usually contains a "call log,"
   which records the telephone number, date, and time of calls made to and from the phone.

22 In addition to enabling voice communications, wireless telephones offer a broad range of
   capabilities.  These capabilities include: storing names and phone numbers in electronic

23 "address books;" sending, receiving, and storing text messages and e-mail; taking,

24 sending, receiving, and storing still photographs and moving video; storing and playing

25 back audio files; storing dates, appointments, and other information on personal
   calendars; and accessing and downloading information from the Internet.  Wireless

26 telephones may also include GPS technology for determining the location of the device.

27            b.     GPS:  A GPS navigation device uses the Global Positioning System

28 to display its current location.  It often contains records of the locations where it has been.

AFFIDAVIT OF SPECIAL AGENT JENNIFER HINCKLEY
USAO# 2015R00315 - 7

1   Some GPS navigation devices can give a user driving or walking directions to another
2   location. These devices can contain records of the addresses or locations involved in
    such navigation. The Global Positioning System (generally abbreviated "GPS") consists
3   of 24 NAVSTAR satellites orbiting the Earth. Each satellite contains an extremely
4   accurate clock. Each satellite repeatedly transmits by radio a mathematical representation
    of the current time, combined with a special sequence of numbers. These signals are sent
5   by radio, using specifications that are publicly available. A GPS antenna on Earth can
6   receive those signals. When a GPS antenna receives signals from at least four satellites, a
    computer connected to that antenna can mathematically calculate the antenna's latitude,
7   longitude, and sometimes altitude with a high level of precision.

8       25.     Based on my training, experience, and research, I know that wireless
9   telephones like the Samsung and HTC SUBJECT DEVICES have capabilities that allow
10  them to serve as a wireless telephone, digital camera, portable media player, GPS
11  navigation device and personal digital assistant. In my training and experience,
12  examining data stored on devices of this type can uncover, among other things, evidence
13  that reveals or suggests who possessed or used the device.

14  **DIGITAL DEVICES AS INSTRUMENTALITIES OF THE CRIMES**
15      26.     The technique of purchasing a pre-paid cellphone plan or SIM card for use
16  while conducting illegal activity is not new. I have observed this technique become the
17  preferred method of communication in my time investigating DTOs. Utilizing a pre-paid
18  cellphone plan allows the user some anonymity as they do not possess an open billing
19  account with the service provider who would require billing information and
20  identification. The SIM card is what stores the account info such as contacts, minutes,
21  call logs, photos etc. The handset device itself is a compatible vessel for the SIM card
22  allowing the capability to operate which ever SIM card is inserted to be used. DTOs also
23  prefer the SIM card or pre-paid short-term use phones so that if seized, law enforcement
24  is unable to gather data off the phone that would link associates or months worth of
25  conspiracy, or evidence of illegal activity. It is my belief through investigative
26  experience that YUAN purchased the AT&T pre-paid plan specifically for use during the
27  illegal trafficking of 23.14kg of MDMA across the international border. YUAN had a
28

AFFIDAVIT OF SPECIAL AGENT JENNIFER HINCKLEY
USAO# 2015R00315 - 8

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  personal cellphone and maintained the same number (SIM card), 253-905-7683, from

2  January through March 2015 as seen on the receipts found in his vehicle.  The purchase

3  of the separate, pre-paid plan by YUAN just hours prior to the trafficking offense

4  suggests its purpose was use in that crime.

5      27.     As documented, YUAN told Border Patrol Agents that he was in the area

6  because his GPS got him lost.  YUAN told agents that he was looking for a hotel.  As an

7  agent who has worked the Blaine, Washington area for ten years, I have knowledge that

8  the closest hotel in that area is approximately 10 minutes west on H Street in the city

9  center of Blaine.  The area where YUAN pulled off to the side of the road and likely

10  received the MDMA from CAI is a very rural area with no indications of traveler

11  accommodations.  Additionally, follow-up investigation revealed that YUAN had paid

12  for a Rodeway Inn hotel room in Seattle, Washington for three nights, from March 15

13  through March 18, 2015.  YUAN paid nightly, rather than at the completion of his stay

14  on the 18th.  Based on my training and experience the delivery of illegal drugs can often

15  be unpredictable as DTOs have to be very cautious when transporting.  DTOs also

16  encounter delays when negotiations are occurring at higher levels.  YUAN paid for the

17  third night's stay at the Rodeway Inn at 10:17 a.m. on March 17, 2015, securing a room

18  for an overnight stay.  YUAN then went to the AT&T store around noon that same day

19  followed by a trip to Enterprise Rental to rent the pickup truck around 4:00 p.m.

20      28.     In my training and experience, many DTOs utilize maps, landmarks or

21  coordinates in order to eliminate the possibility of meeting for the exchange of narcotics

22  in the wrong place.  The maps, landmarks and coordinates are often stored in a GPS

23  device.  They can also be referenced using the internet or capturing the navigational map

24  image with a camera function on a cellular phone.  The area of Valley View and H Street

25  is at least a quarter mile from the international border and would be difficult to navigate

26  to, especially in darkness.  CAI told Border Patrol Agents that he was in the area taking a

27  walk and didn't know he had crossed the international boundary.   It is probable that CAI

28

AFFIDAVIT OF SPECIAL AGENT JENNIFER HINCKLEY
USAO# 2015R00315 - 9

1 | utilized his cellphone to navigate to H Street as well as establish communication with
2 | YUAN in an effort to coordinate the exchange of narcotics.
3 | **PAST EFFORTS TO OBTAIN ELECTRONICALLY STORED INFORMATION**
4 |     29.    On March 19, 2015, HSI served an administrative subpoena to AT&T
5 | requesting information as it related to the purchase and information of YUAN's pre-paid
6 | cellphone.  HSI is still awaiting the results of this subpoena.  It has been my experience
7 | as an agent that service provider information is often times limited and the cellphone
8 | itself can store a considerable amount of data that the service provider does not log.
9 |     30.    On April 9, 2015, Magistrate Judge Dean Brett signed warrants authorizing
10 | the search of the SUBJECT DEVICES.  On April 13, 2015, I executed the search
11 | warrants on the Samsung Galaxy Note 3 as well as the HTC cellphone.  These SUBJECT
12 | DEVICES were locked with pin/passwords.  I, and other agents, utilized a forensic tool in
13 | an attempt to electronically extract data from the SUBJECT DEVICES.  The forensic tool
14 | indicated that a password would need to be entered in order to extract the data from the
15 | SUBJECT DEVICES.  Because agents did not have the passwords for the SUBJECT
16 | DEVICES the forensic tool was rendered useless.  Agents removed the Secure Digital
17 | ("SD") and SIM cards and attempted to extract data utilizing the same forensic tool.   The
18 | information stored on the SD card and/or SIM card was extracted and analyzed.  After
19 | review, and based on my training and experience, it was clear that the data extracted was
20 | minimal and clearly incomplete, as it was devoid of contacts, call logs, and text
21 | messages.  Agents later attempted to sync the SUBJECT DEVICES to a laptop in order to
22 | access the cellphone data.  The HTC cellphone was synced with a laptop unveiling only
23 | photos from the phone.   It was not clear to agents if the photos gathered and synced to
24 | the laptop were a complete collection or just select photos isolated by the syncing
25 | software.
26 |     31.    From my experience as an agent and from supporting forensic agents, I
27 | know that complete data can be obtained from the SUBJECT DEVICES with the
28 | passwords.  Many cellphone devices store information within the device itself rather than

AFFIDAVIT OF SPECIAL AGENT JENNIFER HINCKLEY
USAO# 2015R00315 - 10

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

1  in the SD and/or SIM cards.   In my experience and training, I have also learned that
2  syncing a cellphone to a computer usually only provides limited data unless one is able to
3  provide account information and/or a password so that the cellphone device is authorized
4  to trust the data transfer to the computer.   For all these reasons, I believe that resetting or
5  bypassing the password with assistance from Google, Inc. will allow agents to obtain
6  complete data from the SUBJECT DEVICES.
7        32.    In addition, many of the forensic tools used by agents are constantly being
8  updated with new software and programing.   Due to those frequent advancements, it is
9  also my belief that use of updated or different forensic tools may allow agents access to
10  complete data even if efforts to reset or bypass the password (with assistance from
11  Google) are unsuccessful.

                                                      **REQUEST FOR SEALING**

13        33.    It is respectfully requested that this Court issue an order sealing, until
14  further order of the Court, all papers submitted in support of this application, including
15  the application and search warrant.   I believe that sealing this document is necessary
16  because the warrant is relevant to an ongoing investigation into the criminal organizations
17  as not all of the targets of this investigation will be searched at this time.   Based upon my
18  training and experience, I have learned that, online criminals actively search for criminal
19  affidavits and search warrants via the internet, and disseminate them to other online
20  criminals as they deem appropriate, i.e., post them publicly online through the carding
21  forums.   Premature disclosure of the contents of this affidavit and related documents may
22  have a significant and negative impact on the continuing investigation and may severely
23  jeopardize its effectiveness.

25  //

27  //

AFFIDAVIT OF SPECIAL AGENT JENNIFER HINCKLEY
USAO# 2015R00315 - 11

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## CONCLUSION

34.     I submit that this affidavit supports probable cause for a search warrant authorizing the examination of the SUBJECT DEVICES described in Attachment A to seek the items described in Attachment B.

Respectfully submitted,

Jennifer Hinckley
Special Agent
Homeland Security Investigations

Subscribed and sworn to before me this ___9___ day of July, 2015.

HON. DEAN BREIT
United States Magistrate Judge

AFFIDAVIT OF SPECIAL AGENT JENNIFER HINCKLEY
USAO# 2015R00315 - 12

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## ATTACHMENT A

1.     The SUBJECT DEVICES are identified as:

      a.     Samsung cellphone with serial number RF1DA6QK00N; and

      b.     HTC cellphone with serial number 37H10442-00M-A,

The SUBJECT DEVICES are currently located at the HSI Blaine, Washington seized property vault.

2.     This warrant authorizes the forensic examination of the SUBJECT DEVICES for the purpose of identifying the electronically stored information described in Attachment B.

AFFIDAVIT OF SPECIAL AGENT JENNIFER HINCKLEY
USAO# 2015R00315 - 13

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970

## **ATTACHMENT B**

The SUBJECT DEVICES may be searched only for the following items:

      a.     Assigned telephone number and identifying serial number (e.g. ESN, MIN, IMSI, IMEI);

      b.     Stored list of recently received, sent, or missed calls;

      c.     Stored contact information;

      d.     Stored photographs of narcotics, currency, guns or other weapons, suspected criminal activity, and/or the user of the phone or co-conspirators, with associated metadata for those photographs; and

      e.     Stored text messages.

AFFIDAVIT OF SPECIAL AGENT JENNIFER HINCKLEY
USAO# 2015R00315 - 14

UNITED STATES ATTORNEY
700 STEWART STREET, SUITE 5220
SEATTLE, WASHINGTON 98101
(206) 553-7970